HONORABLE KYMBERLY K. EVANSON

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

| | |
|---|---|
| ANDREW LEONARD, JAMES FRAZIER, AND CHARLES FRYE, individually and on behalf of all others similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>MCMENAMINS, INC.,<br><br>Defendant. | Case No.: 2:22-cv-00094-KKE<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**NOTE ON MOTION CALENDAR: JULY 12, 2024**<br><br>**ORAL ARGUMENT REQUESTED** |

<u>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**</u>

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

LEGAL STANDARD ..........................................................................................................8

ARGUMENT .......................................................................................................................8

    A.  Plaintiffs satisfy the requirements of Rule 23(a)................................................9

        1.  Rule 23(a)(1) numerosity is satisfied ..................................................9

        2.  Rule 23(a)(3) typicality is satisfied .....................................................9

        3.  Rule 23(a)(4) adequacy is satisfied ...................................................10

    B.  Plaintiffs satisfy the Rule 23(a)(2) commonality and Rule 23(b)(3) predominance requirements to certify a damages class ...........................................................11

        1.  Rule 23(a)(3) commonality is satisfied ..............................................12

        2.  Rule 23(b)(3) predominance is satisfied.............................................13

            i.  Common liability questions are overwhelming and satisfy Rule 23(b)(3) .........................................................................13

           ii.  Plaintiffs' common evidence can prove classwide injury .......................15

          iii.  Common issues predominate as to damages ..........................................18

          iv.  Superiority is satisfied ...........................................................................20

    C.  If the Court does not certify a damages class, it should certify a liability-only class under Rule 23(c)(4)...............................................................................22

    D.  The Court should certify an injunctive class under Rule 23(b)(2) .................................22

CONCLUSION ...................................................................................................................23

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

**TABLE OF AUTHORITIES**

**CASES**

*A.B. v. Haw. State Dep't of Educ.*,
  30 F.4th 828, 839 (9th Cir. 2022) ...................................................................................... 9
*Agne v. Papa John's Int'l,*
  286 F.R.D. 559 (W.D. Wash. 2012) .......................................................................... 20, 21
*Ali v. Menzies Aviation, Inc.*,
  Case No. 16-cv-00262-RSL, 2016 WL 4611542 (W.D. Wash. Sept. 6, 2016) ................... 9
*Amchem Prods v. Windsor*,
  521 U.S. 591, 617 (1997) ................................................................................ 11, 21, 22
*Attias v. Carefirst, Inc.*,
  Case No. 15-cv-882-CRC, 2024 WL 1344401 ..................................................... 13, 16, 19
*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121, 1129 (9th Cir. 2017) ................................................................................ 22
*C.P. v. Blue Cross Blue Shield*,
  Case No. 20-cv-06145-RJB, 2022 WL 16835839 (W.D. Wash. Nov. 9, 2022) ............... 9
*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021) ............................................................................. 15
*Clemens v. ExecuPharm Inc.*,
  48 F.4th 146 (3d Cir. 2022) ................................................................................... 16, 17
*Corker v. Costco Wholesale Corp.*,
  Case No. 19-cv-290-RSL, 2023 WL 1965907 (W.D. Wash. Feb. 13, 2023) .................... 11
*Cummings v. Connell*,
  402 F.3d 936, 940 (9th Cir. 2005) ................................................................................... 19
*Fisher v. Thevegaspackage*,
  Case No. 2:19-cv-01613-JAD, 2021 WL 1318315 (D. Nev. Apr. 8, 2021) ........................ 7
*Frlekin v. Apple, Inc.*,
  309 F.R.D. 518 (N.D. Cal. 2015) .................................................................................... 22
*Gonzalez v. U.S. Immigrations & Customs Enf't*,
  975 F.3d 788 (9th Cir. 2020) .......................................................................................... 12
*Guy v. Convergent Outsourcing, Inc.*,
  Case No. 22-cv-1558-MJP, 2023 WL 8778166 (W.D. Wash. 2023) .............................. 10
*In re Facebook Priv. Litig.*,
  572 F. App'x 494 (9th Cir. 2014) .................................................................................... 15
*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) .......................................................................................... 13

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    341 F.R.D. 128 (D. Md. 2022) ....................................................................................... 21

*Jammeh v. HNN Assocs.*,
    Case No. 19-cv-620-JLR, 2020 WL 5407864 (W.D. Wash. Sept. 9, 2020) .................... 10

*Kristensen v. Credit Payment Servs.*,
    12 F. Supp. 3d 1292 (D. Nev. 2014) ............................................................................... 11

*Lane Cty. v. Wood*,
    298 Ore. 191, 201 (Ore. 1984) ......................................................................................19

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ........................................................................................... 10

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ........................................................................................... 18

*Lytle v. Nutramax Labs., Inc.*,
    99 F.4th 557 (9th Cir. 2024) ........................................................................................... 18

*Ngethpharat v. State Farm Mut. Ins. Co.*,
    339 F.R.D. 154 (W.D. Wash. 2021) ............................................................................... 18

*Nguyen v. Nissan N. Am., Inc.*,
    932 F.3d 811 (9th Cir. 2019) ........................................................................................... 19

*Nichols v. GEICO Gen. Ins. Co.*,
    Case No. 18-cv-01253-RAJ, 2021 WL 1661158 (W.D. Wash. Apr. 28, 2021) ......... 20, 22

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022) ............................................................................... 9, 13, 15

*Opperman v. Path, Inc.*,
    Case No. 13-cv-00453-JST, 2016 WL 3844326 (N.D. Cal. July 15, 2016) .....................20

*Parkinson v. Freedom Fid. Mgmt.*,
    Case No. 10-cv-345-RHW, 2012 WL 72820 (E.D. Wash. Jan. 10, 2012) ....................... 11

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ........................................................................................... 22

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) ...................................................................................... 9

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ......................................................................................... 10

*Savidge v. Pharm-Save, Inc.*,
    Case No. 17-cv-186-CHB, 2024 WL 1366832 (W.D. Ky. Mar. 29, 2024) ............... 13, 21

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ............................................................................................ 13, 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................................ 12

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

*Webb v. Injured Workers Pharm., LLC*,
72 F.4th 365 (1st Cir. 2023) ........................................................................................ 16, 17
*Whitman v. State Farm Life Ins. Co.*,
Case No. 19-cv-6025-BJR, 2021 WL 4264271 (W.D. Wash. Sept. 20, 2021) .......... 22, 23
*Williams v. Pillpack LLC*,
343 F.R.D. 201 (W.D. Wash. 2022) ............................................................................ 8, 11
*Yokoyama v. Midland Nat'l Life Ins. Co.*,
594 F.3d 1087 (9th Cir. 2010) ........................................................................................... 9

**RULES**

Fed. R. Civ. P. 23(a) ................................................................................................... *passim*
Fed. R. Civ. P. 23(b) ...................................................................................................*passim*
Fed. R. Civ. P. 23(c) ...........................................................................................................22

**INTRODUCTION**

This is a data breach class action on behalf of over 19,000 current and former employees of McMenamins, Inc. whose data was stolen in a cyberattack. McMenamins owns and operates over 50 restaurants and entertainment venues throughout Oregon and Washington, generating annual revenues in excess of $200MM. In December 2021, McMenamins was hacked by cybercriminals, who accessed the personally identifiable information ("PII") of current and former employees dating back to 1998 (referred to as the "Data Breach"). Plaintiffs seek to certify both damages and injunctive classes of similarly situated current and former employees in Oregon and Washington and have brought tort, contract, and consumer protection claims—all of which arise out of common facts relating to the Data Breach.

Class certification under Rule 23(a) is warranted. Plaintiffs' claims all revolve around the core factual contention that McMenamins caused the Data Breach by systemically failing to implement adequate data security practices over the span of decades. These failures caused a uniform injury to Plaintiffs and the class, whose data was swept up together in the Data Breach. Liability therefore turns on common questions with classwide answers, such as whether McMenamins breached any duties to protect employee PII or broke any contractual obligations to do the same. With a class size well into the tens of thousands and adequate class representatives who have vigorously prosecuted these claims, this case meets the Rule 23(a) requirements.

The requirements to certify both damages and injunctive classes under Rule 23(b) are also met. Plaintiffs have borne their burden to certify a damages class by demonstrating that the common questions in this case can be resolved with common proof that will deliver classwide answers to liability and damages. Injunctive relief is warranted for the simple reason that as of today, over two years after the Data Breach, McMenamins has continued to sit on its hands. As McMenamins has declined to implement the basic data security policies that could have prevented the Data Breach in the first place, employee PII remains vulnerable to future attacks today—just as it was at the time of the Data Breach. The Court should certify the classes in this case.

**FACTUAL BACKGROUND**

**A. McMenamins's retention of employee PII and the Data Breach.**

McMenamins operates over 50 restaurants and entertainment venues throughout Oregon and Washington, generating "revenues exceeding $200MM annually." (Declaration of Jason S. Rathod, Ex-1, McMenamins webpage re: *About McMenamins*.)[1] McMenamins collects and retains the personally identifiable information ("PII") of employees during its onboarding process, in many instances "indefinitely." (Ex-2, McMenamins Resp. to ROG 4.)

In December 2021, McMenamins suffered a Data Breach where hackers accessed the PII of over 19,000 current and former employees employed between January 1, 1998 and December 12, 2021—a time period spanning over twenty years. (Ex-3, McMenamins Notice to Ore. AG (MCMEN-000078-84).) The attacker accessed a trove of sensitive employee PII, including names, social security numbers, dates of birth, and addresses. (*Id.*, MCMEN-00079.) Other sensitive PII taken included employees' race, ethnicity, gender, disability status, medical notes performance, disciplinary notes, health insurance plan election, income amount, and retirement contributions. (*Id.*) On December 15, 2021, McMenamins issued a notice to affected employees informing them of the Data Breach (the "Notice"). (Ex-3, MCMEN-000081-84.[2]) The Notice described the PII accessed and instructed employees: "You should be vigilant when responding to communications from unknown sources and regularly monitor your financial accounts and healthcare information for any unusual activity." (*Id.*, MCMEN-0000081.) The Notice also provided "recommendations for identity theft protection," which included enrolling in a year of credit monitoring services. (*Id.*) In all, the affected employees included 14,861 Oregon residents and 4,693 Washington residents. (*Id.*, MCMEN-000079; Ex-5, McMenamins Notice to Wash. AG at MCMEN-000072).)

---

[1] Plaintiffs have appended evidence relied upon in this Motion to the Declaration of Jason S. Rathod. Citations in the format "Ex-#" refer to exhibits appended to the Rathod Declaration. Documents with the Bates-stamp prefix "MCMEN" were produced by McMenamins in discovery.

[2] McMenamins also produced in discovery another document titled "Data Breach Notice" that is similar, but not identical, to the Notice appended to its letters to State Attorneys General. (Ex-4, MCMEN-000001-02.) Plaintiffs are relying on the latter as the Notice that was issued to employees, as McMenamins described that Notice as the "sample copy of the notification letter" provided to employees. (Ex-3, MCMEN-000079.)

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 2
Case No. 2:22-cv-00094-KKE

**B. McMenamins's data security failures exposed class members' PII to cybercriminals.**

Industry standards require, at a minimum, that organizations have documented data security policies and procedures. (Ex-6, Expert Decl. of Mary T. Frantz ("Frantz Decl.") ¶ 86 (citing U.S. Dep't of Labor guidance re: *Cybersecurity Program Best Practices* (the "DOL Guidance")[3].) For example, the DOL Guidance recommends that organizations maintain a "formal, well documented cybersecurity program" that "fully implements well-documented informational security policies, procedures, guidelines, and standards to protect the security of the IT infrastructure and data stored on the system." (Ex-7, DOL Guidance at 1.) The Payment Card Industry Data Security Standards, a third-party benchmark to which major credit card brands require merchants to comply, likewise require the implementation of written data security policies. (Ex-6, Frantz Decl. ¶ 88.) The maintenance of a written data security policy is thus a basic requirement for establishing "internal control and set[ting] standards for configuration, implementation, and consistency of operations." (*Id.* ¶¶ 88-89.)

McMenamins flunked this minimum requirement. Strikingly, it operated for decades without any written data security policy at all. McMenamins admitted this in the Rule 30(b)(6) testimony of Joe Frazier, its Director of Information Technology, who revealed an alarming lack of basic security controls or standards:

> Q: [A]t the time of the breach, did McMenamins have any sort of a written data security policy that just generally governed the cybersecurity program?
> A: No.
> Q: Was there any sort of a written incident response plan or instructions of any kind on how you would respond to a data incident?
> A: No. There was an unwritten one, which is, call me; call Joe.

(Ex-8, Joe Frazier Dep. Tr. 54:21-55:6.) But when pressed on the "unwritten" policy, Frazier could not provide basic details, let alone specifics on how the unwritten policy established any kind of internal controls or operational standards, as revealed by the following exchange:

---

[3] The DOL Guidance was released on April 14, 2021 and was directed to employers operating ERISA-covered retirement plans, such as McMenamins's 401(k) plan. The DOL Guidance is particularly applicable here, as the Data Breach accessed employees' retirement contribution amount data.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 3
Case No. 2:22-cv-00094-KKE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Q: And could you just describe what that verbal policy is?
A: It's—we do the—you know, we keep things as secure as we can.
Q: Anything more particular than that?
A: No, I don't think so.

(*Id.* 112:11-16.)

Moreover, McMenamins admitted in its interrogatory responses that it rarely updated its data security practices: "Other than modifications by its internal employees, such as Joe Frazier, McMenamins was not recommended any changes to its data privacy security practices or procedures, prior to the Data Breach." (Ex-2, McMenamins Resp. to ROG 14.) While this suggests that some internal changes may have been made, Frazier's Rule 30(b)(6) testimony revealed otherwise. During his ten years in the position, Frazier never once made any recommendations to implement elementary data security measures, such as publishing a general data security policy, data retention policy, or incident response policy. (Ex-8, Joe Frazier Dep. Tr. 92:15-93:1.)

Even as of today—three years following the Data Breach—McMenamins has not implemented basic remedial measures that would prevent a similar cyberattack. McMenamins still has not implemented a written data security policy. (*Id.* 98:5-9 ("Q: You mentioned earlier that, at the time, McMenamins did not have a written data security policy in place. Is that in place now? A: No.").) Nor has McMenamins implemented an incident response policy to provide guidance on responding to similar cyberattacks. (*Id.* 99:14-17 ("Q: You said earlier that there was no written incident response plan in place at the time. Is that in place now? A: No.").) McMenamins has also declined to implement a data retention policy that provides controls for the retention and disposal of employee data. (Ex-9, Kinsley Dep. Tr. 28:15-16 ("Q: And do you have [a data retention policy] now? A: No.").)

## C.  The Data Breach

Having scarcely updated its data security practices for over two decades, McMenamins was a sitting duck for cybercriminals. As Plaintiffs' expert Mary Frantz concluded: "Had McMenamins put in place industry standard guidance from the time, it is likely that it could have prevented the breach altogether" or, at the very least, "quickly detected and neutralized the threat

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 4
Case No. 2:22-cv-00094-KKE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

actor." (Ex-6, Frantz Decl. ¶ 86.) For example, a data security policy that implemented basic and inexpensive controls of subscribing to "[t]hreat intelligence services and alerts" and "timely risk-based patching" could have neutralized the attacker in this case given that they exploited a known software vulnerability for which a software update was available. (*Id.* ¶¶ 97, 102.)

While McMenamins commissioned an investigative report from the Stroz Friedberg firm (the "Stroz Report"), the report misrepresents the timing on when the software vulnerability and update was disclosed. (Ex-10, Stroz Report (MCMEN-001680-1694).) According to the Stroz Report, the attacker initially accessed McMenamins's systems between December 4 – 5, 2021 through an "exploit in the ZoHo ManageEngine Desktop Central software" (a software that manages device access to McMenamins's information system). (*Id.*, MCMEN-001683.) The Stroz Report states that the software vulnerability was "eventually identified as CVE 2021-44515" by ZoHo "**after** [the McMenamins] intrusion has already taken place." (*Id.* (emphasis added).) This was not accurate. In reality, on December 3—the day before the purported intrusion—ZoHo released a security advisory on software vulnerability CVE 2021-44515, providing an "Exploit Detection Tool" that allowed users to detect whether they were affected and an incident response plan that included the "[m]andatory step" of requiring affected users to "update Desktop Central to the latest build." (Ex-11, ZoHo ManageEngine, *CVE-2021-44515: Security Advisory* (referenced in Ex-6, Frantz Decl. ¶ 24 n.10).)

Moreover, McMenamins had time to update the software in response to this advisory, as the attacker spent **over a week** undetected in McMenamins's system "conduct[ing] reconnaissance and data extraction." (Ex-10, Stroz Report at MCMEN-001688.) According to the Stroz Report, it was not until December 12—nine days after ZoHo's security advisory—that the attacker deployed the ransomware that encrypted its systems and held the employee PII hostage. (*Id.*, MCMEN-001685.) Tellingly, the Stroz Report contains no mention of whether McMenamins was aware of the December 3 advisory, nor does it state if the software was updated as recommended prior to the ransomware event. (Ex-6, Frantz Decl. ¶ 72.)

McMenamins has identified the attacker as the "Conti Hacker or Ransomware Group." (Ex-2, McMenamins Resp. to ROG 10.) Conti is a known cybercriminal entity whose business model involves "engag[ing] and purchas[ing] victim accounts and vulnerabilities" from affiliates who steal sensitive data. (Ex-6, Frantz Decl. ¶ 51.) Conti is "notorious for targeting 'low hanging fruit'" like McMenamins who lack basic data security protections. (*Id.*) In this case, Conti demanded a ransom of $10M, and left a ransom note that threatened: "[I]f you try to ignore us. We've downloaded a pack of your internal data and are ready to publish it on out [sic] news website if you do not respond." (Ex-12, MCMEN-178422.)

The weight of evidence demonstrates that Plaintiffs' and class members' PII was posted on the dark web.[4] To start, McMenamins claims it did not pay the ransom, (Ex-13, C. McMenamin Dep. Tr. 27:4-15), giving Conti reason to follow through on its threat. McMenamins's own expert corroborates this, observing: "While McMenamins was **posted on the Conti ransomware blog on December 21, 2021**, the Conti ransomware blog has been offline and inaccessible since May 19, 2022." (Ex-14, Expert Report of J. Rajewski at 8 (emphasis added).) Regardless of whether the Conti blog was ultimately shut down, the posting of the McMenamins hack for five months amounts to an eternity in the data trafficking market where data is often resold in a matter of days. (Ex-6, Frantz Decl. ¶ 90 (noting an "extremely high likelihood that most valuable data is sold by brokers, resellers, and other threat actors on the Dark Net within days of the exfiltration").) McMenamins also commissioned a firm to conduct monitoring of the dark web, which escalated multiple instances of suspicious activity, including a March 2022 report that flagged that "the email generalinfo@mcmenamins[.]com was listed in a market for leaked databases via Telegram" and a September 2022 report that flagged "an offer for McMenamins' server information was posted on the online market 'market_jmia' for $11 USD." (Ex-15, MCMEN-177735, 177754.) Plaintiff Frye has also produced evidence that after the Data Breach, he started receiving notifications from his

---

[4] The dark web is a layer of the internet "where content is intentionally concealed" and "may be used for legitimate purposes as well as to conceal criminal or otherwise malicious activities." *The Dark Web: An Overview*, Congressional Research Service (July 22, 2022), https://crsreports.congress.gov/product/pdf/IF/IF12172.

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

credit monitoring service that his data was posted on the dark web. (Ex-16, Frye Dep. Tr. 30:3-1; *see also* Ex-17, ("Dark Web Alerts" provided by credit monitoring service to Frye).)

### D. McMenamins breached its commitments to protect employees' data.

McMenamins's security failures breached its express and implied commitments to protect employee PII provided in the company's "Electronic Access & Usage Policy" (the "E-Policy"). (Ex-18, MCMEN-000007-11.) The E-Policy provides that "[a]ll employees are expected to comply with this policy" and threatens that non-compliance "may result in disciplinary action up to and including termination of employment." (*Id.*, MCMEN-000007.) All employees are required to review and attest that they understand the E-Policy during the onboarding process. (Ex-9, Kinsley Dep. Tr. 42:5-12.) In the E-Policy, McMenamins emphasizes the importance of protecting confidential information through a clause titled "Confidential Information," which provides: "**Employees may have access to confidential information about other McMenamin employees**, vendors and customer**s. All confidential information should be treated with care.**" (Ex-18, MCMEN-000009 (emphasis added).) This is reiterated in another section regarding email correspondence that provides, "**Employees should use care when sending confidential information** [such as] Social Security Numbers, employee health records, or other confidential material." (*Id.*, MCMEN-000008 (emphasis added).) By requiring all employees to comply with the E-Policy under threat of termination and citing specific examples of sensitive PII, employees had reason to conclude that McMenamins was committed to protecting the security of their PII and had implemented adequate systems to do so.

### E. Plaintiffs and the Classes

Plaintiffs Andrew Leonard, James Frazier, and Charles Frye are former employees of McMenamins who received the Notice regarding the Data Breach. Plaintiffs' Amended Complaint[5] raises tort claims (negligence, breach of fiduciary duty, breach of confidence), contract

---

[5] As McMenamins has failed to file an answer, the Court may also accept "as true the complaint's factual allegations" relating to class certification in deciding this Motion. *Fisher v. Thevegaspackage*, Case No. 2:19-cv-01613-JAD, 2021 WL 1318315, at *1-2 (D. Nev. Apr. 8, 2021).

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 7
Case No. 2:22-cv-00094-KKE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

claims (breach of express contract, breach of implied contract, unjust enrichment / quasi-contract), and a statutory claim under the Washington Consumer Protection Act (WCPA). (Am. Comp. Counts I-VII.) Plaintiffs seek to represent the following classes:[6]

- *Washington Class.* All persons residing in the state of Washington **at the time of the Data Breach** whose Private Information was compromised as a result of the Data Breach discovered on or about December of 2021 who had their information inputted to McMenamins systems and were sent notice of the Data Breach (individuals employed from July 30, 2010 to December 12, 2021). Additionally, all persons residing in the state of Washington whose Private Information was compromised as a result of the Data Breach discovered on or about December of 2021 who had their information inputted to McMenamins systems and were affected, but did not receive a notice letter (individuals employed from January 1, 1998 to June 30, 2010).

- *Oregon Class.* All persons residing in the state of Oregon **at the time of the Data Breach** whose Private Information was compromised as a result of the Data Breach discovered on or about December of 2021 who had their information inputted to McMenamins systems and were sent notice of the Data Breach (individuals employed from July 30, 2010 to December 12, 2021). Additionally, all persons residing in the state of Oregon whose Private Information was compromised as a result of the Data Breach discovered on or about December of 2021 who had their information inputted to McMenamins systems and were affected, but did not receive a notice letter (individuals employed from January 1, 1998 to June 30, 2010).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(a), plaintiffs must satisfy the following requirements to certify a class: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Under Rule 23(b)(3), plaintiffs may recover classwide damages if they can demonstrate "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(2) provides that classwide injunctive relief is available where "the party opposing the class has acted or refused to act on grounds that apply generally to

---

[6] Plaintiffs seek to revise the class definitions from the Amended Complaint to define the class to include persons residing in Washington and Oregon "at the time of the Data Breach" (revised language in bold/underline). *See Williams v. Pillpack LLC*, 343 F.R.D. 201, 206 (W.D. Wash. 2022) ("Amending and revising class definitions is common given the nature of class actions and is specifically contemplated by the Federal Rules.").

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 8
Case No. 2:22-cv-00094-KKE

the class, so that final injunctive relief or declaratory relief is appropriate respecting the class as a whole." Plaintiffs bear the burden of demonstrating the Rule 23 requirements are met by a preponderance of the evidence. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). Certifying a class requires the court to be "satisfied, after a rigorous analysis," that the prerequisites of Rule 23 are established. *Id.* The class certification inquiry affords districts courts with "significant" discretion. *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

## ARGUMENT

### A. Plaintiffs satisfy the requirements of Rule 23(a).

#### 1. Rule 23(a)(1) numerosity is satisfied.

The Classes are sufficiently numerous to satisfy Rule 23(a)(1), which requires the class be "so numerous that joinder of all members is impracticable." While the numerosity requirement is "not tied to any fixed numerical threshold . . . [i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citations omitted); *see also Ali v. Menzies Aviation, Inc.*, Case No. 16-cv-00262-RSL, 2016 WL 4611542, at *1 (W.D. Wash. Sept. 6, 2016) ("As a general rule a potential class of 40 members is considered impractical to join."). Numerosity is thus plainly met in this case. The Classes consist of over 19,000 current and former employees of McMenamins. (*See* Exs-3, 5, McMenamins Notices to Oregon and Washington Attorneys General.) This number comfortably clears the 40-member threshold generally found sufficient to render jointer impractical.

#### 2. Rule 23(a)(3) typicality is satisfied.

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *C.P. v. Blue Cross Blue Shield*, Case No. 20-cv-06145-RJB, 2022 WL 16835839, at *6-7 (W.D. Wash. Nov. 9, 2022) (quoting *A.B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022)). This is a "permissive" test that

"requires only that the representative's claims are reasonably coextensive with those of absent class members; they need not be substantively identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotations omitted).

The test for typicality is satisfied here. First, the action challenges a common course of conduct—McMenamins's data security deficiencies—that uniformly exposed Plaintiffs' and absent class members' PII to cybercriminals. (Am. Compl. Counts I-VII.) Second, the challenged conduct inflicted classwide injury, as demonstrated by McMenamins's uniform Notice to Plaintiffs and putative class members detailing the types of PII that were stolen across the class, flagging the common risk of identity theft, instructing all employees to "regularly monitor" their financial accounts. (Ex-3, MCMEN-000081.) Finally, Plaintiffs and class members suffered similar injuries in the form of diminution in value of PII, breach of contract, and risk of identity theft, discussed more below in Section B(2)(ii). Plaintiffs' claims are thus "reasonably coextensive" with those of absent class members, satisfying typicality. *Rodriguez*, 591 F.3d at 1124.

### 3. Rule 23(a)(4) adequacy is satisfied.

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Adequacy requires that "[f]irst, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Guy v. Convergent Outsourcing, Inc.*, Case No. 22-cv-1558-MJP, 2023 WL 8778166, at *3 (W.D. Wash. Dec. 19, 2023) (quoting *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Plaintiffs have vigorously prosecuted this case by actively participating in the discovery process, assisting in responding to McMenamins's written discovery and testifying at depositions taken by defense counsel. (Rathod Decl. ¶¶ 10-11.); *see also Jammeh v. HNN Assocs.*, Case No. 19-cv-620-JLR, 2020 WL 5407864, at *12 (W.D. Wash. Sept. 9, 2020) (plaintiffs who "assisted in responding to Defendants' written discovery and in supplementing those responses numerous

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 10
Case No. 2:22-cv-00094-KKE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

times" satisfied adequacy requirement). Plaintiffs have also retained experienced counsel that have extensive experience in litigating complex class action litigations like this matter, including specifically, data breach and other consumer class cases. (Rathod Decl. ¶¶ 3-7, 31-34 (appending firm resumes); *see also* Declaration of Cynthia Heidelberg.) Undersigned counsel has vigorously prosecuted this case by investing significant resources to push the case to this point, which has included defeating McMenamins's motion to dismiss, (ECF No. 24); successfully compelling the discovery of material documents, (ECF No. 64); and retaining a data security expert, Mary Frantz, to issue a report in this case, (Ex-6, Frantz Decl.).

Second, there is no conflict of interest between class representatives and the class. This requirement is met where the class representatives' "interests and injuries are the same as the other proposed class members." *Parkinson v. Freedom Fid. Mgmt.*, Case No. 10-cv-345-RHW, 2012 WL 72820, at \*3 (E.D. Wash. Jan. 10, 2012). For a conflict to be disqualifying, it must go to the "merits of the litigation." *Corker v. Costco Wholesale Corp.*, Case No. 19-cv-290-RSL, 2023 WL 1965907, at \*5 (W.D. Wash. Feb. 13, 2023) (citation omitted). Here, as Plaintiffs' claims are closely aligned with those of absent class members, there are no conflicts of interest, let alone those that go to the merits of the litigation. Again, Plaintiffs challenge a common course of conduct regarding McMenamins's data security failures that caused a common injury between Plaintiffs and class members. As Plaintiffs are seeking to vindicate a common injury suffered across the class, their interests are in step with those of the class. This satisfies the adequacy requirement.

**B. Plaintiffs satisfy the Rule 23(a)(2) commonality and Rule 23(b)(3) predominance requirements to certify a damages class.**

Courts often "analyze[] the commonality requirement of Rule 23(a)(2) and predominance requirement of Rule 23(b)(3) together given the significant overlap between the two." *Pillpack*, 343 F.R.D. at 207; *see also Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1304 (D. Nev. 2014) ("Commonality is inherently satisfied if Rule 23(b)(3)'s predominance requirement is met.") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)). Commonality under

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 11
Case No. 2:22-cv-00094-KKE

Rule 23(a)(2) requires that there "are questions of law or fact common to the class." Rule 23(b)(3)'s predominance requirement subsumes this inquiry by requiring the court to "find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members."

### 1. **Rule 23(a)(3) commonality is satisfied.**

Commonality looks to whether Plaintiffs' and class members' claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). It is typically "satisfied where the lawsuit challenges a system-wide practice or policy that affects all the putative class members." *Gonzalez v. U.S. Immigrations & Customs Enf't*, 975 F.3d 788, 808 (9th Cir. 2020). This is because the challenged policy becomes the "glue that holds the class together" where determining the policy's lawfulness resolves the claims on a classwide basis. *Id.* In such circumstances, "individual factual differences among litigants or groups of litigants will not preclude a finding of commonality." *Armstrong*, 275 F.3d at 868; *accord Dukes*, 564 U.S. at 359 ("[E]ven a single common question will do.") (cleaned up).

Commonality is satisfied here because this case likewise involves a challenge to a system-wide policy and practice—McMenamins's data security (or lack thereof). This challenged policy and practice is the glue that holds the class together, as answering whether McMenamins's data security was adequate or inadequate will determine the company's liability across all class members on the claims in this action. Furthermore, virtually all of the elemental liability questions in this case also present common questions whose answers apply classwide. For example:

- For Plaintiffs' tort claims, the court will need to resolve whether McMenamins did or did not have a duty to all employees to protect their PII. (*See* Am. Compl. Counts I, V, VI (Negligence, Breach of Fiduciary Duty, Breach of Confidence).)

- For Plaintiffs' contract and WPCA claims, a jury will need to decide whether McMenamins's onboarding process and E-Policy did or did not create express or implied commitments or representations to all of its

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 12
Case No. 2:22-cv-00094-KKE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

employees regarding their PII. (*See id.* Counts II, III, IV, VII (Breach of Express and Implied Contract, Quasi-Contract, WPCA).).

These are all common questions with binary answers that can resolve the claims of Plaintiffs and the Classes in single strokes. They are the same kinds of common questions that courts have found sufficient to satisfy commonality in certifying data breach class actions. *E.g.*, *Savidge v. Pharm-Save, Inc.*, Case No. 17-cv-186-CHB, 2024 WL 1366832, at *30 (W.D. Ky. Mar. 29, 2024) (in employee data breach, finding commonality met by common questions as to whether employer "owed a duty to the [employee] class members" and "the existence and breach of any implied contract"); *Attias v. Carefirst, Inc.*, Case No. 15-cv-882-CRC, 2024 WL 1344401, at *3 (D.D.C. Mar. 29, 2023) (in consumer data breach, finding requirement satisfied by common questions as to whether defendant "breached an express or implied term of its agreements with its insureds to safeguard their data"). Commonality is thus met in this case.

### 2.  **Rule 23(b)(3) predominance is satisfied.**

The predominance inquiry "focuses on whether the common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019). Predominance is not a "matter of nose-counting" and "even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)); *see also Olean Wholesale*, 31 F.4th at 668 (district courts may not "decline to certify a class that will require determination of some individualized questions at trial, so long as such questions do not predominate over the common questions"). Finally, because predominance looks to whether the claims are "capable of being established through a common body of evidence" across the class, the analysis does not permit "free-ranging merits inquiries." *Olean Wholesale*, 31 F.4th at 666.

### i.  **Common liability questions are overwhelming and satisfy Rule 23(b)(3).**

Predominance can be satisfied by common issues as to liability alone. The Ninth Circuit has recited this rule in plain terms: "[I]f 'each class member could have relied on [the plaintiffs'

evidence] to establish liability if he or she had brought an individual action,' and the evidence 'could have sustained a reasonable jury finding' on the merits of a common question, then a district **may conclude that the plaintiffs have carried their burden of satisfying the Rule 23(b)(3) requirements as to that common question of law and fact**.") *Id.* at 667 (quoting *Tyson Foods*, 577 U.S. at 456-57 (cleaned up) (emphasis added)).

This is the case here. Plaintiffs will establish McMenamins's liability by relying on common proof that could sustain jury merits findings on liability that would apply to all class members. For example:

- Plaintiffs will present common proof that will allow a jury to evaluate whether McMenamins's data security system fell short of industry standards. (*E.g.*, Ex-6, Frantz Decl. ¶¶ 86-87 (providing federal cybersecurity guidance relevant to establishing industry standards and identifying systemic examples of McMenamins's deficiencies); Ex-8, Joe Frazier Dep. Tr. 54:21-55:6 (testifying as to lack of written data security policy before and after the Data Breach); Ex-2, McMenamins Response to ROG 14 (disclosing lack of changes to data security practices prior to Data Breach).) A jury's determination of this issue will resolve key liability questions that apply classwide on all of Plaintiffs' claims, such as whether McMenamins breached any legal duties, contractual commitments, or representations to class members to protect their PII.

- Plaintiffs will present common proof that will allow a jury to determine if McMenamins made express or implied commitments to employees regarding protecting their PII through the E-Policy and employee onboarding process. (*E.g.*, Ex-18, MCMEN-000007 (E-Policy requiring employees to "use care when sending confidential information [such as] Social Security Numbers, employee health records, or other confidential material" under threat of termination); Ex-9, Kinsley Dep. Tr. 42:5-12 (testifying that all employees were required to attest they understood the E-Policy during the employee onboarding process).) A jury's determination of this issue will resolve threshold questions of contract formation and reasonable employees' expectations regarding data security, which have classwide applicability as to Plaintiffs' contract and WPCA claims.

As all absent class members could rely on this common proof to establish liability on the claims in this action, the common merits issues are overwhelming. This alone should resolve the predominance inquiry in Plaintiffs' favor.

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 14
Case No. 2:22-cv-00094-KKE

## ii. Plaintiffs' common evidence can prove classwide injury.

Individualized questions as to injury cannot defeat predominance so long as they "do not predominate over the common questions." *Olean Wholesale*, 31 F.4th at 668. But in any event, the injury Plaintiffs allege they suffered together with class members is largely uniform because the Data Breach compromised the same forms of PII between Plaintiffs and class members alike. Plaintiffs' advance three theories of classwide injury that are capable of being demonstrated with common proof: (1) the diminution in value of their stolen PII; (2) that McMenamins's breach of express and implied contract is itself an injury; and (3) the substantial and imminent risks of identity fraud associated with the disclosure of their private information. Predominance is met as to each theory.

***Diminution in Value.*** There has been judicial recognition of the "growing trend across courts . . . to recognize the lost property value of personal information." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) (citation omitted); *In re Facebook Priv. Litig.*, 572 F. App'x 494 (9th Cir. 2014) (alleged injury that plaintiffs were "harmed both by the dissemination of their personal information and by losing the sales value of that information" was sufficient to state claim for damages). Here, discovery has borne out common proof that will allow a jury to determine the value of the class members' PII and whether it was devalued by the Data Breach. To start, the Notice provides common proof that cybercriminals stole the same types of PII across the board—which allows the jury to determine whether a uniform set of Plaintiffs' and class members' PII was devalued. (Ex-3, MCMEN-000081-84.) The Frantz Declaration provides broadly applicable analysis on how the market for stolen PII operates and specific examples of how stolen PII has been priced and valued in other data breaches. (Ex-6, Frantz Decl. ¶¶ 22 (explaining how data breaches "impair [data's] value to the victims"); 84 (providing examples of how PII has been sold and priced on the dark web); 88 (describing resale market for PII).) Finally, the Frantz Declaration provides an analysis of the value of the stolen PII and the appropriate remedy to repair the diminution in value. (*Id.* ¶ 103 (opining that "10 years of credit monitoring

would be appropriate due to the high value of the data"). As all this proof is applicable across the class, it is capable of producing a common answer as to whether Plaintiffs and class members were injured by the diminution in value of their PII. Predominance on this theory is thus satisfied.

***Breach of Contract.*** Courts in data breach cases have held that a defendant's breach of contract alone is enough to establish injury. *Attias*, 2024 WL 1344401, at *8-9. *Attias* reasoned the breach itself was an injury because "the breach of a contractual obligation to perform some duty has always been understood as a concrete injury that enables the aggrieved contracting party to proceed in an American court"—and this was so even if the suit sought "only nominal damages." *Id.* at *8. In this case, determining if contractual breach occurred will also be resolved through common proof. The jury will decide common questions as to contract formation, promises made, and promises breached by reviewing McMenamins's employee onboarding process, the language of the E-Policy, and whether McMenamins's data security practices lived up to any promises made. (*E.g.*, Ex-9, Kinsley Dep. Tr. 42:5-12; Ex-18, MCMEN-000007-11.) This evidence likewise applies to all class members, satisfying the predominance requirement as to this theory.

***Substantial and Imminent Risk of Data Misuse.***[7] In similar data breach cases, the First and Third Circuits have held that plaintiffs can demonstrate injury by showing a "material risk of future misuse to [plaintiffs'] PII" and concrete harm caused by exposure to this risk, such as "lost time spent taking protective measures." *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 376 (1st Cir. 2023); *see also Clemens v. ExecuPharm Inc.*, 48 F.4th 146 (3d Cir. 2022). Plaintiffs "need not wait until" actual misuse occurs but can "file suit when the risk of harm becomes imminent." *Clemens*, 48 F.4th at 152. Both courts found injury based on factors including: (1) that the PII stolen was sensitive, *id.* at 154 ("disclosure of social security numbers, birth dates, and names is

---

[7] In its Order denying McMenamins's motion to dismiss, this Court held that Plaintiffs adequately pleaded they suffered an injury that bore a "close relationship to the harm associated with the tort of 'disclosure of private information.'" ECF No. 24 at 9. While the Court did not discuss the injury that flowed from this tort, two federal courts of appeal have since issued decisions in similar data breach cases analogizing to the same tort and discussing how to examine the resulting injury. *Webb*, 72 F.4th at 365; *Clemens*, 48 F.4th at 147. These decisions should guide the analysis here.

more likely to create a risk of identity theft or fraud"); (2) that the cyberattack was intentional, *id.* at 157 (risk heightened where known cybercriminal launched a "signature" ransomware attack); (3) that the attackers posted PII on the dark web, *id.* (risk heightened because "we can reasonably assume that many of those who visit the Dark Web . . . do so with nefarious intent"); and (4) that there was evidence at least some of the stolen data was misused, *Webb*, 72 F.4th at 376 (observing that one plaintiff's allegation of actual misuse (a fraudulent tax return) made it more likely that other plaintiffs faced increased risk of misuse).

Here, Plaintiffs advance similar common evidence capable of showing that they, too, were injured by the imminent risk of identity theft and lost time spent taking protective measures:

- McMenamins's Notice provides common evidence affirming that the PII stolen was sensitive, as it disclosed that the cyber-attacker accessed employees' Social Security Numbers, names, birth dates, and addresses. (Ex-3, MCMEN-000081.) The Frantz Declaration provides common evidence explaining how this set of data "is frequently used to create and file fraudulent business entities, open bank accounts, and be used for fraudulent wire transfers." (Ex-6, Frantz Decl. ¶ 22.)

- The Frantz Declaration provides common evidence that demonstrates Conti's cyberattack was intentional. (*Id.* ¶ 51 ("Conti's business model was to engage and purchase victim accounts and vulnerabilities from [affiliate hackers]."))

- Common evidence demonstrates that Plaintiffs' and class members' PII was posted on the dark web, exacerbating the risk of misuse. McMenamins claims it did not pay the demanded ransom, which would allow a jury to infer Conti followed through on its threat to publish the data. (Ex-12, MCMEN-178422 (ransom note); Ex-13, C. McMenamin Dep. Tr. 27:4-15.) McMenamins's own expert corroborates this inference, conceding that "McMenamins was posted on the Conti ransomware blog on December 21, 2021" for nearly five months through May 19, 2022. (Ex-14, Rajewski Report at 8.) In addition, dark web scans returned numerous flags for suspicious dark web activity, such as "an offer for McMenamins' server information was posted on [an] online market . . . for $11 USD." (Ex-15, MCMEN-177735.)

- Evidence that some Plaintiffs' data was misused supports the common inference that other class members face an increased risk of misuse. Plaintiff Frye provided evidence indicating his data was posted on the dark web. (Ex-16, Frye Dep. Tr. 30:3-1; Ex-17, FRYE-00016, 00019).) In addition, Plaintiff Frazier testified that he experienced a fraudulent "request for an

address change" with his car financing company following the Data Breach. (Ex-19, Pl. Frazier Dep. Tr. 44:24-45:5.)

- Finally, Plaintiffs can rely on common evidence to show that Plaintiffs and class members lost time taking protective measures against identity theft. McMenamins's Notice uniformly instructed class members to do the same tasks: "You should . . . regularly monitor your financial accounts and healthcare information for any unusual activity." (Ex-3, MCMEN-000081.) McMenamins also possesses common evidence that shows numerous class members necessarily lost time by registering for the free credit monitoring McMenamins provided. (Ex-13, C. McMenamin Dep. Tr. 59:10-20.)

### iii. Common issues predominate as to damages.

With respect to damages at the class certification stage, plaintiffs need only show that damages "**could** be calculated on a classwide basis, even where such calculations have not yet been performed." *Lytle v. Nutramax Labs., Inc.*, 99 F.4th 557, 571 (9th Cir. 2024) (emphasis in original) (collecting cases). As the focus of the predominance inquiry is "whether the method of proof would apply in common to all class members," this requires only a "workable method" on the damages question. *Id.*; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."). In this case, Plaintiffs advance three damages theories: (1) benefit-of-the-bargain as measured by cost of repair; (2) nominal damages; and (3) punitive damages. Each of these theories present methodologies that can be calculated on a classwide basis, thus satisfying predominance.

***Benefit-of-the-Bargain and Cost of Repair***. The benefit-of-the-bargain damages model is "intended to give that party the benefit of the bargain **by awarding him or her a sum of money that will, to the extent possible, put the injured party in as good a position as that party would have been in had the contract been performed**." *Ngethpharat v. State Farm Mut. Ins. Co.*, 339 F.R.D. 154, 168 (W.D. Wash. 2021) (emphasis added). In class actions involving automobile defects, courts have certified damages models that measure the benefit-of-the-bargain by the "average cost of repair," which "awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive." *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 821 (9th Cir. 2019). In this case, Plaintiffs advance a benefit-of-the-bargain

damages model that is measured by the average cost of repairing the injury class members suffered by the diminution in value of their PII, McMenamins's contractual breaches, and the imminent risks of identity fraud caused by the Data Breach. The Frantz Declaration has opined that this cost of repair amounts to providing ten years of credit monitoring for the class, given how the type of employee PII compromised in the Data Breach "is most often used for identity theft and to propagate additional compromises for up to ten years." (Ex-6, Frantz Decl. ¶ 22.) This remedy is appropriate to put class members in as good a position as they would have been in had McMenamins fulfilled their data security commitments. Most importantly, the benefit-of-the-bargain damages model can be calculated on a classwide basis, as the cost of credit monitoring products can be readily reviewed and priced in a uniform manner across the class. (*Id.* ¶ 104 ("Accurate quotes for [credit monitoring] services are best obtained close in time to implementation and can be obtained by Plaintiffs closer to trial and/or the damages phase of this litigation.")) It therefore presents a workable damages model that satisfies predominance.

*Nominal Damages*. In the data breach context, *Attias* certified a class asserting breach of contract claims where class members' recovery was limited to nominal damages. *Attias*, 2024 WL 1344401, at *8-9. *Attias* held that a damages model where each class member could recover nominal damages satisfied predominance because it "dispens[ed] with the need for individualized damages calculations." *Id.* at *10; *see also Cummings v. Connell*, 402 F.3d 936, 940 (9th Cir. 2005) ("[W]hen nominal damages are awarded in a civil rights class action, every member of the class whose constitutional rights were violated is entitled to nominal damages"). Here, if the jury finds McMenamins liable for breaching express or implied contract terms contained in the E-Policy, nominal damages can be computed classwide using basic arithmetic, presenting another workable damages model that can be applied across the class.

*Punitive Damages*.[8] Finally, Plaintiffs seek punitive damages. Punitive damages naturally

---

[8] While Plaintiffs advance the former two damages models for both Oregon and Washington Classes, the punitive damages model is advanced for only the Oregon Class. *See Lane Cty. v. Wood*, 298 Ore. 191, 201 (Ore. 1984)

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 19
Case No. 2:22-cv-00094-KKE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

satisfy the predominance requirement because their purpose "is not to compensate the victim, but to punish and deter the defendant [and] any claim for such damages hinges, not on facts unique to each class member, but on the defendant's conduct toward the class as a whole." *Opperman v. Path, Inc.*, Case No. 13-cv-00453-JST, 2016 WL 3844326, at *16 (N.D. Cal. July 15, 2016). In this case, a punitive damages model is likewise computable on a classwide basis given the jury's broad discretion in determining a punitive damages award to deter the conduct at issue.

### iv. Superiority is satisfied.

Finally, class treatment of the more than 19,000 claims against McMenamins for its failure to protect its employees' PII is "superior to other available methods for fairly and efficiently adjudicating the controversy" under Rule 23(b)(3). Rule 23(b)(3) superiority factors include: (A) class members' "interests in individually controlling the prosecution or defense of separate actions"; (B) the extent of "litigation concerning the controversy already begun by or against class members"; (C) the "desirability" of concentrating litigation in one forum; and (D) "likely difficulties in managing a class action." This is a "non-exhaustive list," where the superiority inquiry "requires a comparative evaluation of alternative mechanisms of dispute resolution." *Nichols v. GEICO Gen. Ins. Co.*, Case No. 18-cv-01253-RAJ, 2021 WL 1661158, at *14 (W.D. Wash. Apr. 28, 2021).

Here, all Rule 23(b)(3) factors favor certification. First, the small-dollar nature of the more than 19,000 claims at issue here militates against finding that members have interest in litigating their claims. Indeed, "[t]he policy 'at the very core of the class action mechanism is to overcome the problem that [cases involving] small recoveries do not provide the incentive' for individuals to bring claims." *Agne v. Papa John's Int'l,* 286 F.R.D. 559, 571 (W.D. Wash. 2012) (quoting *Amchem*, 521 U.S. at 617). As the court found in *Papa John's*, the potential for small recoveries

---

(defendants' breach of fiduciary duty was "so egregiously culpable that an award of nominal damages is sufficient to support the awards of punitive damages against them").

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

(there, $500) was "not sufficient to compensate the average consumer for the time and effort that would be involved in bringing a small claims action against a national corporation[.]" *Id.*

Courts across the country have found in data breach cases that cognizable damages equate to small-dollar recoveries, and thus, "[t]he vast majority of class members have a *de minimis* interest in individually controlling the prosecution of their [] claims because the monetary value of their damages would be dramatically outweighed by the cost of litigating an individual case." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 341 F.R.D. 128, 165 (D. Md. 2022), *vacated and remanded sub nom.* 78 F.4th 677 (4th Cir. 2023), *and reinstated by* 345 F.R.D. 137 (D. Md. 2023) (certifying class); *see also Savidge*, 2024 WL 1366832, at *31 ("As other courts have found in similar data breach cases. . . [g]iven the size of the claims, individual class members have virtually no interest in individually controlling the prosecution of separate actions[.]") (collecting cases) (quotations omitted)).

The remaining Rule 23(b)(3) superiority factors heavily favor certification. First, Plaintiffs are aware of only one other similar case against McMenamins, which was filed after the instant case in Oregon state court, but that case has been stayed in favor of this case. (Rathod Decl. ¶ 12.) Second, concentration of putative members' claims in this forum serves litigation efficiency and conserves judicial resources as it "provides a single proceeding in which to determine the merits of the plaintiffs' claims, and therefore protects the defendant from inconsistent adjudications." *Marriott*, 341 F.R.D. at 166. Third, given the predominating common issues across the classes—issues that turn on McMenamins's course of conduct, *see supra*, Section B—the advantages of consolidating litigation in a single forum far outweigh multitudinous and duplicative actions in different jurisdictions. *See, e.g., Savidge*, 2024 WL 1366832, at *31 (where common issues predominated in data breach litigation, any "minimal difficulties in managing this class action do not render a class action inferior under Rule 23(b)(3)"). As this Court has held: "because the cases most likely to be unmanageable are those involving myriad individual issues, the manageability concern often simply echoes the predominance analysis. Therefore, courts generally hold that if

the predominance requirement is met, then the manageability requirement is met as well." *GEICO*, 2021 WL 1661158, at \*11.

Indeed, this case, which involves over 19,000 small-dollar claims that are unlikely to see their day in court **without** class treatment, embodies the "very purpose of Rule 23(b)(3)— vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Amchem*, 521 U.S. at 617).

**C. If the Court does not certify a damages class, it should certify a liability-only class under Rule 23(c)(4)**

Rule 23(c)(4) permits the certification of a class "with respect to particular issues" such as liability. In *Frlekin v. Apple, Inc.*, a wage-and-hour class action, the court certified a liability-only class, permitting individualized damages inquiries to be resolved in a subsequent "old-fashioned claims process" where class members would individually certify under oath the extent of their damages, subject to cross-examination and counter-proof by the defendant. 309 F.R.D. 518, 526 (N.D. Cal. 2015). As discussed above, the common liability questions in this case are overwhelming. Thus, should the Court find other predominance issues not satisfied, it should certify a liability-only class under Rule 23(c)(4).

**D. The Court should certify an injunctive class under Rule 23(b)(2).**

Rule 23(b)(2) permits certification of an injunctive class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class." This requirement is "unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 687-88 (9th Cir. 2014); *Whitman v. State Farm Life Ins. Co.*, Case No. 19-cv-6025-BJR, 2021 WL 4264271, at \*10 (W.D. Wash. Sept. 20, 2021) (certifying injunctive class where challenged terms of an insurance policy were "same for all prospective class members").

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 22
Case No. 2:22-cv-00094-KKE

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

As discussed above, Plaintiffs and class members were injured by McMenamins systemic data security deficiencies that enabled hackers to steal their PII. McMenamins continues to retain the data of current and former employees—including Plaintiffs and class members—as demonstrated by Joe Frazier's testimony that the company was "able to recover" a substantial amount of the data compromised in the ransomware attack, which included employee PII. (Ex-8, Joe Frazier Dep. Tr. 183:5-16.) Notwithstanding this recovery, McMenamins has not implemented basic security features that would prevent similar cyberattacks, such as a written data security policy, data retention policy, or other meaningful remedial measures. (*E.g.*, Ex-8, Joe Frazier Dep. Tr. 98:5-99:17; Ex-9, Kinsley Dep. Tr. 28:10-14.) The risks imposed on Plaintiffs and class members are thus ongoing, as little has changed since the Data Breach—their PII remains on McMenamins's system subject to the same inadequate protections and thus vulnerable to similar cyberattacks. These continuing company-wide deficiencies present risks that are "the same for all prospective class members" such that an "injunction or declaration relating to [those policies] will be uniform"—and indeed, necessary to prevent future harm to Plaintiffs and class members. *State Farm Life*, 2021 WL 4264271, at *10.

## CONCLUSION

The Court should grant Plaintiffs' Motion for Class Certification.

I certify that Plaintiffs' Motion for Class Certification contains 8,301 words, in compliance with the Local Civil Rules.

Respectfully submitted,

Date: June 14, 2024

**BRESKIN JOHNSON & TOWNSEND, PLLC**

By: */s/* Cynthia Heidelberg
Cynthia Heidelberg, WSBA #44121
1000 Second Avenue, Suite 3670
Seattle, WA 98104
(206) 652-8660 Fax (206) 652-8290
cheidelberg@bjtlegal.com

**MIGLIACCIO & RATHOD LLP**

Nicholas A. Migliaccio, *pro hac vice*
Jason S. Rathod, *pro hac vice*
Randolph T. Chen, *pro hac vice*
Mark D. Patronella, *pro hac vice*
412 H Street NE
Washington, DC 20002
Tel: (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
rchen@classlawdc.com
mpatronella@classlawdc.com

**COHEN & MALAD**

Lynn A. Toops, *pro hac vice*
One Indiana Square, Suite 1400
Indianapolis, IN 42604
Tel: 317-636-6481
ltoops@cohenandmalad.com

**STRANCH, JENNINGS & GARVEY, PLLC**

J. Gerard Stranch, IV, *pro hac vice*
Grayson Wells, *pro hac vice*
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Tel: 615-254-8801
gstranch@stranchlaw.com
gwells@stranchlaw.com

*Counsel for Plaintiffs*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION - 24
Case No. 2:22-cv-00094-KKE

**BRESKIN | JOHNSON | TOWNSEND** PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660